UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDEN NOROUZI,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE, *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-1282 (ACR) |

**MEMORANDUM OPINION AND ORDER[1]**

Plaintiff Aiden Norouzi is an American citizen. Dkt. 1 ¶ 1. His wife, Mina Dianaty, is an Iranian citizen and resident. *Id.* ¶ 2. In May 2021, Plaintiff filed an I-130 visa petition with USCIS on Dianaty's behalf. *Id.* ¶ 13. USCIS "purportedly" approved the petition in April 2022 and later sent the case to the State Department's National Visa Center (NVC). *Id.* ¶¶ 15, 16. The NVC then completed its processing of the case and sent the case to the U.S. Embassy in Armenia to conduct interviews. *Id.* ¶¶ 16, 17. Dianaty interviewed at the Embassy in December 2022 and has yet to receive a decision on the visa application, which remains in administrative processing. *Id.* ¶¶ 18, 32. In the meantime, Plaintiff has "made repeated attempts" to receive a determination in this matter, including contacting the Embassy and his Senator's office, "all to no avail." *Id.* ¶¶ 19, 20.

Plaintiff filed this case on May 1, 2024, against the U.S. Department of State, the U.S. Embassy in Armenia, Secretary of State Antony Blinken, and U.S. Ambassador to Armenia

---

[1] The Court takes the facts from Plaintiff's Complaint, Dkt. 1. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

Kristina Kvien.[2]  Dkt. 1.  Citing the Fifth Amendment of the U.S. Constitution, the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361, the Complaint asserts that the delay in adjudicating Plaintiff's application is unreasonable and requests an order requiring prompt adjudication.  *Id.* ¶¶ 21–39.  The Complaint contends that this delay was caused by the Department of Homeland Security's (DHS) Controlled Application Review and Resolution Program (CARRP), an internal policy that intentionally delays the applications of individuals from Muslim-majority countries, such as Plaintiff's wife, by deeming them potential "national security concerns."  *Id.* ¶¶ 26–31.  As such, the Complaint also requests this Court to find CARRP unlawful, enjoin Defendants from applying it to Plaintiff's application, and order its rescission.  *Id.*  Defendants moved to dismiss the Complaint on July 23, 2024.  Dkt. 8.

## I.   LEGAL BACKGROUND

A U.S. citizen who wants to help a noncitizen spouse obtain lawful permanent resident status may file an I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services (USCIS), a subagency of DHS.  *See* 8 U.S.C. §§ 1152(b)(2)(A)(i), 1154; 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition and the beneficiary spouse is outside the United States, the agency forwards the case to the NVC for processing.  8 C.F.R. § 204.2(a)(3).  The beneficiary spouse must then submit additional paperwork, including a visa application form, and pay any fees.  *See* 22 C.F.R. §§ 42.62–63; 9 Foreign Affs. Manual § 504.1-2(b), https://fam.state.gov/FAM/09FAM/09FAM050401.html.  Once the applicant (that is, the beneficiary spouse) meets those requirements, the NVC designates the case "documentarily

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of State Marco Rubio "is automatically substituted" for his predecessor, Anthony Blinken.  Fed. R. Civ. P. 25(d).

complete" and coordinates with the appropriate consulate or embassy to schedule the applicant for a required consular interview. *See* 22 C.F.R. § 42.62; 9 Foreign Affs. Manual § 504.1-2(b)–(d). "Appointments are generally scheduled in the chronological order of the documentarily complete applicants." 9 Foreign Affs. Manual § 504.1-2(d). Following the interview, the consular officer "must" generally either "issue the visa" or "refuse the visa." 22 C.F.R. § 42.81(a). If the consular officer needs additional information to determine the applicant's eligibility, she may, "in accordance with [State] Department procedures," refuse the visa pending "further administrative processing." Administrative Processing Information, U.S. Dep't of State, https://travel.state.gov/content/ travel/en/us-visas/visa-information-resources/administrative-processing-information.html.

## II.    LEGAL STANDARD

Defendants' Motion seeks dismissal both under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Where, as here, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at

678 (cleaned up). To meet that standard, a plaintiff's allegations must support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

## III.   ANALYSIS

### A. Plaintiff Has Standing to Sue

Defendants argue that Plaintiff lacks standing to sue because his injury flows from the rights of a third party—in this case, the delayed re-adjudication of his wife's visa application.[3] *See* Dkt. 8 at 14. To establish standing, Plaintiff must allege an "actual or imminent" injury that is "concrete" and "particularized," "fairly traceable" to Defendants' actions, and "likely" to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561. Defendants point to the Supreme Court's recent decision in *Dep't of State v. Muñoz*, which held that the harm suffered from the denial of a spouse's visa application does not give a plaintiff a "constitutional right to participate in [the spouse's] consular proceeding," *Muñoz*, 602 U.S. 899, 917 (2024), to bolster their argument that Plaintiff has no standing here. *See* Dkt. 8 at 14–15. But the Supreme Court was not making a sweeping statement about the standing of spouses in immigration cases. Rather, it merely found that the plaintiff "had no procedural due process right to an explanation 'for why someone else's visa was denied.'" *Janay v. Blinken*, 743 F. Supp. 3d 96, 111 (D.D.C. 2024) (quoting *Muñoz*, 602 U.S. at 918). Additionally, the *Muñoz* Court looked at the government's

---

[3] Defendants also argue that the consular nonreviewability doctrine bars Plaintiff's claims and that Defendants do not have any clear, nondiscretionary duty to act, as is necessary for a mandamus claim. Dkt. 8 at 7–21. Neither argument implicates the Court's Article III jurisdiction, and so the Court need not address them before dismissing this case on other grounds. *See Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 & n.5 (D.D.C. Mar. 8, 2024) (explaining why the Court may bypass these arguments).

4

discretion to deny a visa application, whereas Plaintiff here "merely seek[s] a decision—one way or the other—and *Muñoz* does not speak to the Court's authority to grant that relief." *Id.* at 112. *Muñoz* thus does not apply to this case, and Plaintiff therefore has standing.

### B. Plaintiff Has Not Stated Plausible Unreasonable Delay Claims

The Court turns next to Plaintiff's unreasonable-delay claims under the APA and the Mandamus Act. "[T]he central question" under both statutes is "whether the agency's delay is so egregious as to warrant mandamus." *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

To answer that question, courts in this Circuit consider the six *TRAC* factors, drawn from the D.C. Circuit's decision in *Telecomm. Rsch. & Action Ctr. (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984): (1) "[T]he time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* at 80 (cleaned up). These factors are often grouped into four inquiries:

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the

>agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023) (cleaned up).

Taking these inquires in turn, the Court finds that the *TRAC* factors weigh against Plaintiff and that dismissal is appropriate. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340–46 (D.C. Cir. 2023) (affirming dismissal of visa-delay case for failure to state a claim based on *TRAC* factors).

   1. ***TRAC* factors one and two**

The first two factors, which consider whether the agency is following a "rule of reason," "congressionally prescribed or otherwise," *Khazaei*, 2023 WL 6065095, at *6 (cleaned up), support dismissal. Plaintiff does not dispute that Congress has not prescribed a timeline for the adjudication of visa applications. Dkt. 9 at 14–15. In the absence of such congressional guidance, "courts typically turn to [case law] as a guideline." *Barazandeh*, 2024 WL 341166, at *8 (cleaned up). Plaintiff points to decisions from the Northern District of California to highlight the unreasonableness of what he views as the more than three-year delay at issue here.[4] Dkt. 9 at 14. The law of this jurisdiction, however, does not find that the delay as properly calculated—twenty-six months since the interview at the Embassy—is unreasonable. *See, e.g.*, *Dastagir v.*

---

[4] Courts disagree as to how to calculate delay in cases like this one—for example, whether the relevant end date is the day of the case's filing or the day of the decision. *See, e.g.*, *Dehkordi v. Bitter*, No. 22-cv-2470, 2023 WL 5651845, at *4 n.4 (D.D.C. Aug. 31, 2023). Plaintiff measures the delay from the date he filed the I-130 petition in May 2021. *See, e.g.*, Dkt. 9 at 14. Courts in this Circuit have rejected this argument. *See, e.g.*, *Rohmeena v. Bitter*, No. 1:23-cv-2754, 2024 WL 3898549, at *3, n. 3 (D.D.C. Aug. 22, 2024). Consistent with prior decisions involving administrative processing, the Court treats the December 2022 interview date as the starting point and assumes, favorably to Plaintiff, that the delay runs through today. *See Amerifar v. U.S. Dep't of State*, No. 1:23-CV-3182, 2024 WL 3898541, at *3, n. 4 (D.D.C. Aug. 22, 2024).

*Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding twenty-nine-month delay reasonable); *Zandieh v. Pompeo,* 2020 WL 4346915, at *7 (D.D.C. July 29, 2020) (same). The cases cited by Plaintiff thus fail to move the needle in his favor, and the first two factors favor dismissal.

### 2. *TRAC* factor four

The fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, "carries significant weight," *Barazandeh*, 2024 WL 341166, at *9, and strongly favors Defendants. The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting [a party] at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). Plaintiff requests exactly this type of relief. Since "[c]onsular processing capacity is . . . a zero-sum game," an order expediting processing of Plaintiff's application "would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own," *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (cleaned up); *accord Da Costa*, 80 F.4th at 343–44. This factor weighs strongly against relief.

### 3. *TRAC* factors three and five

*TRAC* factors three and five, which examine "the interests prejudiced by the delay," including the effect on "human health and welfare," *Da Costa*, 80 F.4th at 344 (quoting *TRAC*, 750 F.2d at 80), lean in Plaintiff's favor, but not enough to outweigh the other factors. Plaintiff alleges that the delay has caused him emotional hardship stemming from the separation from his family. Dkt. 1 ¶ 39. Courts in this District have concluded that similar allegations swayed these factors in other plaintiffs' favor, if only narrowly, *see, e.g.*, *Siddiqui v. Blinken*, 646 F. Supp. 3d

7

69, 77 (D.D.C. 2022) (finding that the third and fifth *TRAC* factors "slightly" favored a visa-delay plaintiff based on an allegation that the delay "had a profound and negative impact on his life") (cleaned up). *But see Da Costa*, 80 F.4th at 344–45 (concluding that these factors did not favor visa-delay plaintiffs absent harms beyond "the uncertainty that results any time an individual must continue to wait to secure a benefit"). Although the Court understands Plaintiff's distress, "many others facing similar circumstances" are experiencing the same harm. *Siddiqui*, 646 F. Supp. 3d at 77 (cleaned up); *accord Bahrami*, 2024 WL 3638200, at *7 ("[D]elays in visa processing separate . . . many families."). Without more pressing or unusual injuries, *TRAC* factors three and five do not warrant the Court interfering with the agency's priorities to place Plaintiff at the front of the line. *See Da Costa*, 80 F.4th at 344–45.

4. ***TRAC* factor six**

The sixth *TRAC* factor—whether "any impropriety lurk[s] behind agency lassitude," *TRAC*, 750 F.2d at 80 (cleaned up)—remains neutral. Plaintiff himself states that he does not allege "Defendants' delay was caused by bad faith." Dkt. 9 at 16. But because the Court "need not find any [impropriety] in order to hold that agency action is unreasonably delayed," this factor does not move the needle. *Da Costa*, 80 F.4th at 345–46 (cleaned up).

\*   \*   \*

The *TRAC* factors do not plausibly point Plaintiff's way, and his unreasonable-delay claims therefore fail. The Court must dismiss his unreasonable delay claims under Rule 12(b)(6).

**C. Plaintiff's CARRP Claims Are Speculative**

Plaintiff alleges that Defendants used CARRP to intentionally delay the applications of his wife and other individuals from Muslim-majority countries by deeming them potential

"national security concerns." Dkt. 1 ¶¶ 26–31.  Plaintiff bases these claims "upon information and belief" and little else.  *Id.* ¶ 27.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (cleaned up).  Plaintiff's allegations regarding CARRP do not meet this threshold, and Defendants point to several cases in this District and others rejecting claims like Plaintiff's.  Dkt. 8 at 38–39.  Accordingly, the Court must dismiss Plaintiff's CARRP claim under Rule 12(b)(6).

### D. Plaintiff Fails to State a Due Process Claim

Plaintiff alleges that Defendants violated his Fifth Amendment due process rights by failing "to provide a reasonable and just framework of adjudication in accordance with applicable law."  Dkt. 1 ¶ 39.  As Defendants have noted, *see* Dkt. 8 at 39–40, this argument is at odds with the Supreme Court's recent holding in *Dep't of State v. Muñoz* that a citizen "does not have a fundamental liberty interest in [their] noncitizen spouse being admitted to the country." *Muñoz*, 602 U.S. at 909.  Plaintiff counters that his interest lies in having his wife's application adjudicated in a timely fashion, rather than in her being admitted to the country.  *See* Dkt. 9 at 20.  But this does not allow Plaintiff to escape the *Muñoz* Court's holding that a spouse in his shoes lacks a constitutional right to participate in his wife's "consular process" and "visa proceedings."  *Muñoz*, 602 U.S. at 917.  Thus, Plaintiff fails to state a due process claim.  The Court must dismiss his due process claim under Rule 12(b)(6).

### IV. CONCLUSION

The Court sympathizes with Plaintiff's situation, but his Complaint does not state plausible unreasonable-delay, CARRP, or due process claims.  The Court therefore dismisses this case.

For these reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss, Dkt. 8; **DISMISSES** Plaintiff's Complaint, Dkt. 1, and this case without prejudice; and **DIRECTS** the Clerk of Court to close this case.

**SO ORDERED.**

This is a final appealable Order.  *See* Fed. R. App. P. 4(a).


Date:   March 6, 2025

_____
ANA C. REYES
United States District Judge